187 So.2d 343 (1966)
Marguerite A. PEARSON, Appellant,
v.
ST. PAUL FIRE & MARINE INSURANCE CO., a Corporation, and Robert Lewis Polk, Appellees.
No. G-219.
District Court of Appeal of Florida. First District.
June 2, 1966.
Rehearing Denied June 27, 1966.
Howell, Dawson, Galant, Maddox & Sulik, Jacksonville, for appellant.
Howell, Kirby, Montgomery, Sands & D'Aiuto, and George Stelljes, Jr., of Marks, Gray, Yates, Conroy & Gibbs, Jacksonville, for appellees.
CARROLL, DONALD K., J.
The plaintiff in an automobile negligence action has appealed from a final summary judgment entered by the Circuit Court for Duval County in favor of the corporate defendant.
The ultimate question for our determination in this appeal is whether there was sufficient *344 evidence before the court at the hearing on the corporate defendant's motion for a summary judgment, from which evidence a jury could lawfully find that the individual defendant, at the time he drove the corporate defendant's automobile against the rear of the plaintiff's car, was operating the said automobile of the corporation with its knowledge and consent. In the appropriate opening words of appellant's brief: "This case involves primarily the doctrine of implied consent to the operation of an automobile by the brother-in-law of an employee to whom the continuous possession and the operation and control of the automobile had been entrusted by the owner."
The Circuit Court, finding insufficient evidence of the required knowledge and consent, entered the final summary judgment appealed from, pursuant to the provisions of Rule 1.36, Florida Rules of Civil Procedure, 30 F.S.A., which we shall quote and discuss later in this opinion.
Since our determination of the question on appeal must be based upon the inferences that may reasonably be drawn from the evidence before the Circuit Court at the said hearing, and since we think that the question is a close one, we must discuss in some detail that part of such evidence which seems pertinent to the issue of the above-discussed knowledge and consent on the part of the corporate defendant.
The evidence before the court at the said hearing, construed in the light most favorable to the appellant, established the following facts pertinent to the said issue:
The automobile which collided with the rear of the plaintiff's car was owned by the defendant St. Paul Fire and Marine Insurance Company, a corporation, hereinafter referred to as St. Paul. At the time of the collision Austin D. Brown was employed as St. Paul's Florida manager. In connection with his employment St. Paul furnished Brown the said automobile, which was a 1964 Bel Air tan-colored Chevrolet. Brown regularly used this automobile and kept it in his possession day and night. He used it not only in connection with his employment with St. Paul, but he and Mrs. Brown also were permitted by St. Paul to use the automobile for their personal purposes, and they freely and regularly did so.
The defendant Robert Lewis Polk, who was Mrs. Brown's brother, and Mrs. Polk, her mother, had come to Jacksonville from their out-of-state homes to visit the Browns.
The Browns had and used regularly two Chevrolet automobiles  the tan-colored 1964 Bel Air Chevrolet owned by St. Paul and a green 1957 Chevrolet, which Brown first described as his wife's car and later said that it was owned by him but that she drove it. This latter car is the one which Mrs. Brown drove to the airport to meet her brother, the defendant Polk, on Friday, December 20, 1963, two days prior to the collision which gave rise to the present action.
St. Paul had a rule, which Brown said was in writing but which was not produced, the effect of which was that only Brown and Mrs. Brown could drive the St. Paul car. Polk claimed that he knew nothing about any such limitation on the use of the said car, and in fact did not know that there was any distinction between the two Chevrolets as to their ownership or otherwise, except as to their colors and their ages. Brown testified, however, that, from conversations he had had with his brother-in-law, Polk knew that the car which Brown drove, the tan Chevrolet, was a company car, and that Polk never asked him for permission to use the said company car.
On Saturday, the day following Polk's arrival at the Browns' home, he rode in both automobiles, and, accompanied by his sister, he drove the green Chevrolet to a grocery store two blocks from the said home. Sometime during the same day Polk said, according to Brown, that he had a Christmas present to mail so that it would get to California before Christmas, but did *345 not specify when or under what circumstances he wanted to mail it. On that Saturday night Polk told Mrs. Brown and his mother that he was going to the airport the next morning to mail the package, but he did not ask Mrs. Brown for either car and she did not tell him either to take the tan Chevrolet or not to take it.
On the next morning, Sunday, December 22, 1963, Polk was the first of the four persons in the house to arise, at about 9:30 o'clock. The Browns' bedroom door was open and he went in and saw a ring of keys, eight or nine of them, lying on the dresser. He did not arouse either Brown or Mrs. Brown but moved softly so as not to awaken either of them, and picked up the keys on the dresser.
When Polk reached the Browns' driveway, the two Chevrolets were standing on the driveway, the tan car slightly behind the green car. Polk made no effort to move the tan car a few feet in order to be able to drive out the green car, but instead got in the tan Chevrolet and drove off. There was no name or other letters or insignia on the latter car to indicate that it might not belong to the Browns.
While Polk was on his trip to the airport driving the tan Chevrolet, the car crashed into the rear of an automobile being operated by the plaintiff, who was seriously injured. Later the plaintiff filed the present negligence action against Polk as the operator of the tan Chevrolet and against St. Paul as its owner, alleging in her complaint that at the time and place of the said collision Polk was driving the said car with the "knowledge and consent" of St. Paul.
In the foregoing paragraphs we have tried to recite in some detail, as fairly as possible to the positions of the parties in this cause, the evidence which was before the Circuit Court when it entered the summary judgment in favor of St. Paul. Such detailing seems to us appropriate here because we consider that the question before us  that is, the issue of whether Polk was driving with St. Paul's knowledge and consent was for the determination of the court as a matter of law or was a question of fact for the jury  is so close that evidence that might ordinarily seem of minor significance could well throw the decision one way or the other.
The rule has been established in this state by innumerable decisions that the owner of an automobile is liable for the negligent operation of the car by a person driving it with the owner's knowledge and consent. Such knowledge and consent constitute an essential element in establishing the liability of the owner, and must be proven before subjecting the said owner to liability for damages proximately caused by such person driving the owner's automobile. As in like cases, the burden, of course, to prove such knowledge and consent is upon the plaintiff who brings the action based upon the said rule.
Analyzing the evidence before the court at the hearing on the defendant St. Paul's motion for a summary judgment, we find no evidence whatever that Polk was driving St. Paul's automobile with that company's express knowledge and consent; hence, in order to prevail in her action against St. Paul, the plaintiff must establish implied knowledge and consent on the part of St. Paul's officers or agents. The only such officer or agent whose conduct could conceivably, under the evidence, amount to implied knowledge and consent was Polk's brother-in-law, Brown, the agent of St. Paul. We find no evidence that Brown was put on notice that his brother-in-law would take St. Paul's automobile on the trip to the airport, instead of taking the green Chevrolet, which was the only car which Polk had driven since he arrived in Jacksonville and which was equally available in the Browns' driveway for his use. Even though Mrs. Brown might have known that her brother was planning to go to the airport, there was likewise nothing to put her on notice that *346 he planned to drive St. Paul's automobile to the airport instead of the green Chevrolet. On the other hand, the argument could be made from the same evidence that the Browns should have contemplated the possibility that Polk might use St. Paul's car, and that, therefore, they should have warned him not to drive that car.
In reflecting upon the reasoning that has led us to the conclusion that there was insufficient evidence before the Circuit Court from which reasonable men could conclude that Polk at the time and place of the collision was operating the automobile owned by St. Paul with its knowledge and consent, we realize that probably the most decisive evidence is the testimony that Polk had to and did trespass into the bedroom where the Browns were sleeping and without permission pick up the keys on the dresser in order to operate St. Paul's car. Evidently the same testimony was given considerable weight by the Circuit Court when it entered the summary judgment appealed from herein, pointing out therein that Polk "took it upon himself to enter the bedroom" of Mr. and Mrs. Brown while they "were in bed asleep and take key to said automobile from said bedroom without any prior permission, either express or implied, to do so, and it appearing to the Court that those actions on the part of the defendant Polk amounted to a species of conversion or theft for which an owner of an automobile is not liable to injured third persons under the decisions binding upon this Court, and it appearing that there is no genuine issue on the question of consent and permission, and that as a matter of law the defendant St. Paul Fire and Marine Insurance Company is entitled to a final judgment. * *"
In the just-quoted language of the summary judgment the use of the words "* * amounting to a species of conversion or theft. * * *" was presumably based upon the following language of the Supreme Court of Florida in its opinion in Susco Car Rental of Florida v. Leonard, 112 So.2d 832 (1959):
"* * * when control of such a vehicle is voluntarily relinquished to another, only a breach of custody amounting to a species of conversion or theft will relieve an owner of responsibility for its use or misuse."
We agree with the Circuit Court's analysis that the actions of Polk in entering the Browns' bedroom and taking the keys from their dresser "amounted to a species of conversion or theft." This conclusion does not, of course, necessarily cast any reflection upon the morality of Polk's conduct so far as his sister and brother-in-law, Mr. and Brown, are concerned, because of the intra-family relationship and understanding, but we do think that his said conduct was tantamount to a species of conversion, so far as proof of St. Paul's knowledge and consent is concerned as an essential element of the liability of St. Paul as the owner of the automobile in question.
The Circuit Court entered the final summary judgment appealed from herein under Rule 1.36 of the Florida Rules of Civil Procedure, the key provision of which rule provides as to the entry of summary judgments and decrees: "The judgment or decree sought shall be rendered forthwith if the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment or decree as a matter of law."
Many applications and constructions of Rule 1.36 have led to the recognition of many principles applicable to summary judgments and decrees, including the rule that such judgments and decrees should be entered with caution and that, when a question of fact is "extremely close," the question should be allowed to go to the jury or other trier of the facts, yet a court should not hesitate to enter a summary judgment or decree when doing so is in keeping with the letter and spirit of the said Rule 1.36 and the decisional law of this state.
*347 The function of the rule authorizing summary judgments, as the Supreme Court of Florida held in National Airlines, Inc. v. Florida Equipment Co. of Miami, 71 So.2d 741 (1954), "is to avoid the expense and delay of trials when all facts are admitted or when a party is unable to support by any competent evidence a contention of fact." In the case at bar we think that the Circuit Court well performed that function by holding that there was no competent evidence before it to support the plaintiff's contention that at the time and place of the collision in question Polk was driving St. Paul's car with St. Paul's knowledge and consent  such knowledge and consent being an essential element of St. Paul's liability to her on account of the said collision.
The situation in the case on appeal affords almost a perfect illustration of the highly difficult responsibility assigned to the courts in summary judgment proceedings in actions in which juries are the determiners of factual issues, as well as when the courts in such actions pass upon motions for a directed verdict or for a judgment notwithstanding the verdict. The general principle in such actions is, of course that the jury determines questions of fact and the court questions of law. The line of demarcation between what is a question of fact and what is a question of law may easily seem obscure to a layman or a casual student of the law when a court passes upon the legal sufficiency of the evidence to establish a certain fact in issue, as in a summary judgment proceeding. This power, however, to pass upon the legal sufficiency of the evidence, without actually encroaching upon the jury's function as the trier of the facts, is a power that has been shown by centuries of experience in American-English jurisprudence to be essential to the integrity of our system of justice. Without such a power in the courts to determine the legal sufficiency of the evidence, some of our juries might conceivably deteriorate into bodies like the "peoples' courts" in Communist countries  free to find whatever they want regardless of questions of evidence or its legal sufficiency.
In any event, in the case at bar, it is our view that the Circuit Court correctly entered the final summary judgment appealed from herein, and so the said judgment should be and it is
Affirmed.
WIGGINTON, Acting C.J., and TAYLOR, HUGH M., Associate Judge, concur.