765 So.2d 955 (2000)
Debra Ann CHRISTENSON-SULLINS and Ryan Sullins, her husband, Appellants,
v.
Emily M. RAYMER and Terry J. Thorton, Appellees.
No. 1D99-2583.
District Court of Appeal of Florida, First District.
September 6, 2000.
*956 Stephen K. Moonly and Cheryl A. Roberson of Bledsoe, Schmidt, Lippes, Moonly & Roberson, P.A., Jacksonville, for Appellants.
Harold H. Catlin, Jacksonville, for Appellees.
BROWNING, J.
Appellants, Debra Ann Christenson-Sullins (Christenson-Sullins) and her husband, Ryan Sullins, appeal the trial court's imposition of summary judgment in favor of Appellee, Emily M. Raymer (Raymer). We reverse.
On April 21, 1998, an automobile owned by Raymer, collided with a vehicle driven by Christenson-Sullins, damaging Christenson-Sullins' vehicle and injuring Christenson-Sullins. It was assumed and agreed by the parties that Thorton was the person driving Raymer's vehicle. However, the driver of the vehicle fled the scene of the accident, abandoned the vehicle, and was never positively identified.
It is undisputed that Raymer loaned her car to Lynda Bisel (Bisel), that Bisel kept the car at her home, and that Thorton was Bisel's boyfriend and resided with Bisel. Bisel testified that, on the day of the accident, she came home and took a nap. When she awoke, the car was gone, but she did not call the police to report the car was stolen. Raymer's affidavit[1] indicated that when the police informed her that her car had been involved in an accident and that a man had been driving, she tried to locate Bisel. She went to Bisel's house, but no one was home. She found Bisel playing darts at a bar approximately two blocks from her home.
Bisel's deposition indicated she had previously permitted Thorton to drive Raymer's vehicle, but upon learning Thorton did not have a valid driver's license, she expressly forbade him to use the car. On the date of the accident, Thorton did not have Bisel's permission to use the vehicle, and Thorton had never taken Raymer's car without Bisel's permission after he had been forbidden to use it. Raymer's affidavit in support of summary judgment indicated that Bisel was an insured driver on Raymer's auto insurance policy; and that Thorton did not have Raymer's authorization or consent to operate Raymer's vehicle; and that Thorton was not listed on the application for insurance as a driver of the vehicle and was not allowed to operate the vehicle.
Under the dangerous instrumentality doctrine, an owner who gives authority to another to operate the owner's vehicle, by either express or implied consent, has a nondelegable obligation to ensure that the vehicle is operated safely. See Hertz Corp. v. Jackson, 617 So.2d 1051, 1053 (Fla.1993). Knowledge and consent constitute an essential element in establishing liability of the owner and must be *957 proven before the owner can be subjected to liability for damages proximately caused by the negligence of the driver. See Tribbitt v. Crown Contractors, Inc., 513 So.2d 1084 (Fla. 1st DCA 1987). However, "the essential authority or consent which underlies the dangerous instrumentality doctrine is simply consent to the use or operation of [the vehicle] beyond [the owner's] own immediate control." Tribbitt, 513 So.2d at 1086, quoting Susco Car Rental System of Florida v. Leonard, 112 So.2d 832 (Fla.1959). When control is voluntarily relinquished to another, only a breach of custody amounting to a species of conversion or theft will relieve the owner of responsibility for a vehicle's use or misuse. See Susco, 112 So.2d at 832; Tribbitt.
In the case at bar, Raymer consented to the operation of her car beyond her immediate control by permitting Bisel to use her car. Thus, Raymer is liable for damages caused by the use of her car unless a species of theft or conversion is shown. See Susco; Tribbitt. Although Thorton did not have permission of either Raymer or Bisel to use Raymer's car and was expressly instructed not to use the car, the record does not show a total absence of a genuine issue of fact entitling Appellees, to summary judgment as a matter of law. The record shows Bisel failed to call the police upon discovering the car had been taken without her permission, and was so unconcerned about the allegedly unauthorized use of the car she left her home to frequent a local bar and play darts before discovering the location of the car, which could be interpreted by a jury as inconsistent with Thorton's having taken the car by conversion or theft, and consistent with the absence of a conversion or theft of the car by Thorton. The significance of these facts should be weighed by a jury, and not the trial court. Because an issue of fact remains as to whether Raymer's vehicle was stolen or converted, summary judgment was improper.
In making this determination, on a very close question, we are reinforced by the rule governing summary judgments requiring that every possible inference must be drawn in favor of the nonmoving party. See Moore v. Morris, 475 So.2d 666 (Fla. 1985).
Judge Miner in his forceful and highly persuasive dissent maintains that Thorton's use of Bisel's vehicle constitutes a species of conversion or theft as a matter of law under Pearson v. St. Paul Fire & Marine Ins., 187 So.2d 343 (Fla. 1st DCA 1966), and the trial court should be affirmed. Except for the case of Thomas v. Atlantic Associates, Inc., 226 So.2d 100 (Fla.1969), we would agree with Judge Miner and make his dissent the majority opinion. However, in Thomas the Florida Supreme Court reversed a summary judgment that was specifically based upon Pearson.[2]Thomas involved the use of a car by a 13-year old child admittedly without the permission of her parents. The court, in construing Pearson, concluded that it was not controlling, and drew a distinction between a member of a household's use of a car without permission, and that of a house guest in "stealing into his host's bedroom and appropriating the keys to a car" and thereby using the car without permission as occurred in Pearson. See id at 103. We conclude that Thorton's actions in the instant case are sufficiently related to the facts in Thomas to preclude summary judgment against Plaintiffs, and impel us not to adopt the well-expressed rationale of the dissent.
Furthermore, we cannot agree with the dissent that the actions of Bisel in failing to report to authorities that the car used by Thorton had been taken, and Bisel's obvious lack of concern about the taking of the car as evidenced by her frequenting a bar and engaging in a dart game before *958 the car had been located, do not create a conflict in the evidence that precludes entry of summary judgment. A jury would have every right to disbelieve Bisel in view of her obviously inconsistent actions with her verbal testimony. Accordingly, Bisel's testimony is not uncontroverted as asserted by the dissent. In fact, the court in Dooley v. Harris, 714 So.2d 1206 (Fla. 5th DCA 1998), cited by Judge Miner in his dissent, pointed out in affirming a summary judgment in favor of the owner of a car, that the owner had reported the person exercising the unauthorized use of the car to the police department. It, therefore, stands to reason that if reporting the unauthorized use of the car to the police department is evidence supporting a determination of conversion or theft, the failure to report the unauthorized use of Raymer's car is evidence of the absence of a conversion or theft. Of course, a jury might determine Bisel's conduct to be consistent with her verbal testimony. However, that prerogative is vested with the jury after hearing testimony about the circumstances and observing the demeanor of the witnesses.
For the reasons stated, we REVERSE and REMAND for proceedings consistent with this opinion.
BENTON, J., CONCURS; MINER, J., DISSENTS WITH OPINION.
MINER, J., dissenting.
My esteemed colleagues in the majority have concluded that final summary judgment for appellee was improvidently granted below. I respectfully disagree and would affirm the trial court's final disposition of the case.
I take no serious issue with the facts of the case as recited in Judge Browning's opinion, but I believe a bit more detailed factual scenario is appropriate. First, although the operator of appellee Raymer's automobile at the time of the accident in question was never positively identified as Terry Thorton, there seems to be no dispute that he was, in fact, the driver.[3] Next, in due course, appellants filed a complaint against appellee and Thorton alleging that at the time of the accident, the Raymer automobile was being driven by Thorton with her knowledge and consent and that the accident was caused by Thorton's negligent operation of the vehicle.[4]
After the complaint and answer were filed, discovery commenced including the taking of the depositions of Emily Raymer and her friend, Lynda Bisel. These depositions reflect the following:
At one time, Emily Raymer and Lynda Bisel were roommates and since Bisel did not own an automobile, Raymer let her use one of her (Raymer's) cars as needed.[5] In time, Bisel became romantically involved with Terry Thorton and moved into an apartment with him. When Bisel left the home that she had shared with Raymer, Raymer permitted her to take the automobile purchased for her use and keep it at her new apartment.
Initially, Bisel let Thorton drive Raymer's car on occasion. However, upon finding out that he did not have a driver's license, Bisel expressly instructed Thorton not to drive the automobile anymore and, as far as she knew, he complied with her directive until the day of the accident in question. On that day, Bisel testified that she returned home tired from work in the afternoon and lay down to take a nap. When she awoke, she noticed the car was missing. While the record is silent in this regard, it is likely that she believed that *959 Thorton had taken it for some purpose despite her express instructions that he not drive it. She did not notify law enforcement authorities that it was missing. When accident investigators notified Raymer that a car registered in her name had been involved in an accident, Raymer set about looking for Bisel who was located in a Ramada Inn lounge a block or so from the home she shared with Thorton.[6] When found, Bisel was engaged in a game of darts.
After discovery was completed, appellee moved for summary judgment asserting that the pleadings, sworn discovery, and affidavits filed by herself and Bisel reveal that at the time of the accident in question, Thorton was operating the Raymer vehicle without her consent or Bisel's consent[7] and contrary to Bisel's specific instruction not to do so. Apparently, because there was no evidence that Raymer or Bisel consented to Thorton's use of Raymer's car and because there was persuasive evidence that Bisel had expressly forbidden Thorton the use of the automobile, the trial court granted appellee's summary judgment motion.
Appellants' primary argument on appeal is that summary judgment for Raymer was improper because Raymer acknowledged that she consented to Bisel's use of the car and thus was liable for Thorton's use.
In Susco Car Rental Sys. v. Leonard, 112 So.2d 832 (Fla.1959), the Supreme Court announced Florida's Dangerous Instrumentality Doctrine that an owner who gives authority to another to operate the owner's vehicle, by either express or implied consent, has a non-delegable obligation to ensure that the vehicle is operated safely. The court qualified this liability, however, as follows:
[W]hatever may have been the deviations from this course, the logical rule, and we think, the prevailing rationale of the cases, is that when control of such a vehicle is voluntarily relinquished to another, only a breach of custody amounting to a species of conversion or theft will relieve an owner of responsibility for its use or misuse.

Id. at 836 (emphasis added). Where the owner of the car has consented to its use by another party, the question of whether the use by a third party is consensual or constitutes a "species of conversion or theft" is more often than not deemed an issue of material fact as opposed to a conclusion of law. See Thomas v. Atlantic Assoc., 226 So.2d 100 (Fla.1969);[8]Stupak v. Winter Park Leasing, Inc., 585 So.2d 283, 284 (Fla.1991) (reversing because question of whether driver's use of rental car beyond expiration date of rental agreement constituted theft or conversion is issue of material fact); Tribbitt v. Crown Contractors Inc., 513 So.2d 1084 (Fla. 1st DCA 1987) (reversing summary judgment where affidavits established driver operated vehicle without knowledge and consent of vehicle owner but did not eliminate as genuine issue the question of whether driver's use of vehicle constituted species of conversion or theft). However, the issue regarding what constitutes a species of conversion or theft may be and has been deemed a conclusion of law in certain instances, and summary judgment may be properly granted.
In Pearson v. St. Paul Fire & Marine Ins., 187 So.2d 343 (Fla. 1st DCA 1966), St. Paul Fire & Marine Insurance owned a car, which it furnished to its employee, one Brown. Brown used the car in connection with his employment, and St. Paul allowed both Brown and his wife to use the car for their own personal business. The Browns *960 also owned another car. On a Saturday morning during a visit by Mrs. Brown's adult brother, (a Mr. Polk), Polk arose early, quietly entered the bedroom of the sleeping Browns, and took a set of keys off the dresser. Polk then took the St. Paul company car to mail a package and en route rear-ended another car. The trial court granted summary judgment to St. Paul, and this court affirmed. As in this case, there was no evidence that St. Paul had given implied or actual consent to use the car to Polk, but only to the Browns. Thus, the plaintiff in the case had to "establish implied knowledge and consent on the part of St. Paul's officers or agents," i.e., the Browns. Id. at 345. In granting summary judgment to St. Paul, the lower court relied on the evidence that Polk "`took it upon himself to enter the bedroom'" while the Browns "`were in bed asleep and take [the] key to said automobile from said bedroom without any prior permission, either express or implied to do so.'" Id. at 346. The lower court thus had concluded that such actions "`amounted to a species of conversion or theft for which an owner of an automobile is not liable to injured third persons.'" Id. This court agreed as follows:
We agree with the Circuit Court's analysis that the actions of Polk in entering the Browns' bedroom and taking the keys from their dresser "amounted to a species of conversion or theft." This conclusion does not, of course, necessarily cast any reflection upon the morality of Polk's conduct so far as his sister and brother-in-law, ... are concerned, because of the intra-family relationship and understanding, but we do think that his said conduct was tantamount to a species of conversion, so far as proof of St. Paul's knowledge and consent is concerned as an essential element of the liability of St. Paul as the owner of the automobile in question.
Id. at 346. This court then determined that summary judgment was appropriate on this issue in that case because there was "no competent evidence ... to support the plaintiff's contention that at the time and place of the collision in question Polk was driving St. Paul's car with St. Paul's knowledge and consent." Id. at 347. Accordingly, in Pearson there was no issue of material fact regarding whether Polk's actions constituted a species of conversion or theft.[9]
Subsequently, other courts have approved summary judgments granted on the issue of whether a driver's use of a vehicle was consensual or constituted a species of conversion or theft relieving the vehicle owner of liability. See Commercial Carrier Corp. v. S.J.G. Corp., 409 So.2d 50 (Fla. 2d DCA) (affirming summary judgment and citing Pearson where driver who rented car left the car unattended with the keys in ignition and the car was stolen), review denied, 417 So.2d 328 (Fla.1982). See also Dooley v. Harris, 714 So.2d 1206 (Fla. 5th DCA 1998) (affirming summary judgment because no issue of material fact as to whether owner implied consent to take vehicle or whether theft of vehicle reasonably foreseeable where houseguest of owner took locked car from closed garage without permission along with other belongings of owner).
In the case at hand, appellants claim that summary judgment was improper because Raymer admitted consenting to the use of her vehicle beyond her immediate control and thus she should be held liable "as a matter of law" under the dangerous instrumentality doctrine because "there are no allegations or issues of theft or conversion" in this case. Otherwise stated, appellants decline to consider whether Thorton's use was consensual in determining Raymer's liability because her original consent to someone else's use means anyone's use is consensual ("Therefore, Raymer should be held liable for damages *961 resulting from the negligent operation of her vehicle no matter who was driving it."). In my view, under Susco such reasoning is faulty. See Hertz Corp. v. Jackson, 617 So.2d 1051 (Fla.1993) (reversing Third District en banc opinion, which stated that liability "both arises and is complete when the owner consents to the use of the vehicle `beyond his [or her] own immediate control,'" because court did not consider whether species of theft or conversion occurred that would relieve Hertz of liability).
The complaint filed below alleged that Thorton was using Raymer's vehicle "with her knowledge and consent" at the time of the collision. The complaint did not allege, as appellants now contend, that Raymer gave her consent to Bisel's use and thus was strictly liable for Thorton's use. Accordingly, the affidavits of Raymer and Bisel below unequivocally refute the allegation that Raymer knew and consented to Thorton's use. The documents supporting the grant of summary judgment also refute the theory that consent to Bisel's use made Raymer liable for Thorton's use.
Under the case law of Florida, the question of whether Thorton had implied or express consent from Bisel to use the car, i.e., whether his use constituted a species of conversion or theft was necessarily an issue below. The undisputed evidence before the trial court was that Bisel had expressly forbidden Thorton's use of the car and had no knowledge of Thorton ever having used the car without her permission after she instructed him not to do so. See Duarte v. Wetzel, 682 So.2d 1200 (Fla. 4th DCA 1996) (affirming summary judgment where the owner told 18-year-old grandson who lacked a valid driver's license that he could not drive without permission and without owner in car); Martinez v. Hart, 270 So.2d 438 (Fla. 3d DCA 1972) (affirming summary judgment where owner expressly revoked permission and prohibited driver from driving automobile because of driver's failure to obtain valid driver's license and driver took car without owner's permission).
Under Susco and Pearson and the above cited cases, the trial court could have and did correctly conclude as a matter of law that there was no issue of material fact regarding whether Thorton's use was consensual (implied or express), i.e., whether it constituted a species of theft or conversion, because the undisputed facts demonstrate that his use was not consensual and therefore did constitute a "species of conversion or theft" that relieved Raymer of liability. Thus, this case is unlike Tribbitt v. Crown Contractors Inc., 513 So.2d 1084 (Fla. 1st DCA 1987), cited in support of the majority opinion in which owners Crown and Ensco had provided a company car to employee Brashier, and the car was involved in a collision caused when Brashier's fiancé (one Jacobs) was driving the car alone. This court reversed summary judgment because although Crown and Ensco's affidavits showed that they had no knowledge of Jacobs' use of the car and had not given her permission (either express or implied) to use the car and had consented to use of the vehicle beyond their control to Brashier, the question remained "whether Jacobs' operation of the vehicle constituted a species of conversion or theft," i.e., "whether there had been a breach of custody amounting to a species of conversion or theft." Id. at 1087. Thus, on remand, the lower court there would necessarily have to consider whether Brashier had given Jacobs implied or express consent to use the car, an issue on which the trial court had no information when it originally granted summary judgment to Crown and Ensco. Such was not the case here. The trial court was possessed of unrefuted evidence that Thorton did not have Raymer's or Bisel's express or implied consent to take the car as he did.
In reversing the final summary judgment at bar, the majority reasons that (1) because Bisel did not report the automobile stolen when she discovered it was *962 missing and (2) because Bisel "left her home to frequent a local bar and play darts," a jury could determine that the uncontroverted testimony by deposition and/or affidavit from Raymer and Bisel was "inconsistent with Thorton's having taken the vehicle by theft or conversion and consistent with implied or express permission having been extended by Bisel to Thorton."
This line of reasoning is puzzling to me because, as the majority finds, Thorton took Raymer's car without either express or implied consent from Raymer or Bisel and after being expressly told by Bisel not to drive it. He obviously converted it to his own use, thus positioning this case squarely within the "species of conversion or theft" exception to Florida's Dangerous Instrumentality Doctrine.
Next, in cases of this type, no appellate court has yet imposed a requirement that the owner (like Raymer) or the authorized user (like Bisel) of an automobile make complaint to the authorities that a family member, or retainer, or loved one has committed a species of conversion or theft or suffer the consequence of liability under the dangerous instrumentality doctrine.
Finally, consent, express or implied, is not an issue in this case given the above finding, and where Bisel went and what she was doing after she discovered the car missing is no more relevant to such non-issue than it would have been had Bisel been found at choir practice in a neighborhood church. Accordingly, I respectfully dissent.
NOTES
[1] Affidavits of Bisel and Raymer were submitted in support of Appellee's motion for summary judgment. However, both affidavits are defective as they are not under oath. See Fla. R. Civ. P. 1.510. Only the deposition of Bisel provides a basis for this opinion.
[2] It is interesting to note that in Thomas the late Judge Rawls, a former member of this court and sitting on the Supreme Court by special assignment, dissented on the rationale of Pearson that is also the basis for Judge Miner's dissent.
[3] After he abandoned the automobile at the accident site, he fled the scene, left town, and as of the taking of appellee's sworn deposition had not been seen since he left.
[4] Thorton could not be located for service of process.
[5] Emily Raymer actually purchased a car for Bisel's use and Bisel's name was on Raymer's insurance policy as an additional insured.
[6] Since she had no other means of transportation, Bisel apparently walked to the Ramada Inn perhaps hoping to find Thorton there.
[7] Nowhere in the complaint is Lynda Bisel's name mentioned.
[8] Thomas, cited by the majority in support of reversal, unlike the case at bar, did not involve an express prohibition against use of the automobile by a third party.
[9] Interestingly, in their briefs, appellants make no mention of Pearson much less attempt to distinguish it from the facts and rationale of the instant case.