913 So.2d 650 (2005)
Patricia Ann Doyle MING, etc., Appellant,
v.
INTERAMERICAN CAR RENTAL, INC., etc., et al., Appellees.
No. 5D04-2222.
District Court of Appeal of Florida, Fifth District.
September 2, 2005.
Rehearing Denied October 31, 2005.
*652 Charles B. Draper of Draper Law Office, Kissimmee, for Appellant.
David R. Evelev, Julianne J. Flynn and Griffith J. Winthrop, III of Alvarez, Sambol, Winthrop & Madson, P.A., Orlando, for Appellee Interamerican Car Rental, Inc.
Sean M. McDonough and Kristy L. Harrington of Bussey, White, McDonough and Freeman, P.A., Orlando, for Appellee Callie Elaine Robinson.
No Appearance for Appellee Leslie Danielle Robinson.
SHARP, W., J.
Ming, the personal representative of the estate of Robert Doyle, appeals from two final summary judgments, which determined no liability on the part of the two defendants below, Interamerican Car Rental, Inc., and Callie Robinson, in a wrongful death case. Interamerican rented a car to Robinson. She was the only authorized driver. On the day of the accident, Robinson's daughter, Leslie, drove the car to her mother's workplace. On the way, she struck and killed Doyle.
We reverse because this record presents material questions of fact regarding whether Leslie had Robinson's implied consent to drive the car and whether her use of the car constituted a conversion. This is bolstered because the two key actors in this case, Robinson and Leslie, made a number of conflicting statements and their credibility was at issue.
The record disclosed that Robinson owned several vehicles, including a Mazda, a Cadillac, a Pontiac, two Dodge Caravans, and two older Chevrolets. She permitted Leslie to drive the Mazda and the Cadillac. Leslie lived for a time with her boyfriend after her driver's license was revoked because of a drug offense. Leslie testified she let her boyfriend's sister and others drive her in the Cadillac.
At some point, Leslie moved back into her mother's home, which they also shared with her brother, Landon. She was on probation at the time of the accident. When asked if she ever drove one of her mother's cars after losing her license, she admitted she would occasionally "sneak around the block." Her brother was aware of this and he told Robinson about it. Robinson told Leslie: "You know you ain't got no license, you don't need to be driving."
A few weeks before the accident, Robinson rented the car involved in the accident from Interamerican, to use for work because her other cars were not in working order. She never gave Leslie or Landon express permission to use the rental car, nor did she expressly prohibit them from using it. She normally had the keys in her purse, or put them on the top of her dresser.
On the day of the accident, Robinson could not find her keys. She asked Leslie and Landon if they had seen them. When no one could find them, Robinson rode to work with a neighbor.
Leslie found the keys, but her statements and Robinson's are conflicting as to where. In her examination under oath, Leslie said she found them in her mother's bathroom. In her deposition, she testified she looked in the bathroom for the keys but could not find them. She did find them on her mother's bed "under the covers and stuff." Robinson testified Leslie told her she found the keys in her bathroom. In her deposition, Robinson said Leslie told her she found the keys under the dust ruffle under the foot of the bed.
Leslie testified she decided to drive the car to her mother's place of work so that *653 her mother could drive to lunch and home from work. Robinson testified Leslie told her she was bringing the rental car to her so that she could keep a doctor's appointment that afternoon. Robinson agreed that she had a doctor's appointment that day, but an affidavit from the doctor's office asserted she did not.
At the accident scene, Leslie pretended to the police to be her sister and produced her sister's driver's license. According to the police report, Robinson's written statement identified her as both the renter of the car and the driver. Robinson's written statement given to the police alleged: "I was driving down 192 a little man tryed [sic] to cross the road I put on brakes he ran into the tire the little fellow was o.k." In a discovery response, Robinson alleged she wrote the statement "verbatim, based on what her daughter ... told her" and signed it because an employee of Interamerican directed her to do so.

Standard of Review
We review the issues on appeal de novo. Kaplan v. Morse, 870 So.2d 934, 936 (Fla. 5th DCA 2004). In reviewing a summary judgment, we must determine whether there is any "genuine issue as to any material fact" and whether "the moving party is entitled to judgment as a matter of law." Fla. R. Civ. P. 1.510(c). Generally, "[t]he party moving for summary judgment has the burden to prove conclusively the nonexistence of any genuine issue of material fact." City of Cocoa v. Leffler, 762 So.2d 1052, 1055 (Fla. 5th DCA 2000). The evidence contained in the record, including supporting affidavits, must be considered in the light most favorable to the non-moving party, and if the slightest doubt exists, summary judgment must be reversed. Krol v. City of Orlando, 778 So.2d 490, 492 (Fla. 5th DCA 2001).

Interamerican's Summary Judgment
Ming argues that the lower court erred in granting summary judgment for Interamerican because Interamerican failed to conclusively prove that Leslie's possession of its rental vehicle on her drive to Robinson's work place, amounted to conversion. Ming sued Interamerican pursuant to the dangerous instrumentality doctrine. That doctrine recognizes that a motor vehicle operated on a public highway is a dangerous instrumentality and the owner who entrusts it to another is liable for injury to others caused by negligence of the person to whom the instrumentality is entrusted. Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629 (1920).
As applied to rental car companies, the supreme court has held that the owner of a rented vehicle may be held responsible for damages resulting from the operation of the vehicle by someone other than the person to whom it was rented, even though the operation was contrary to the express terms of the rental agreement. Stupak v. Winter Park Leasing, Inc., 585 So.2d 283, 284 (Fla.1991). "When control of such a vehicle is voluntarily relinquished to another, only a breach of custody amounting to a species of conversion or theft will relieve an owner of responsibility for its use or misuse." Id., quoting Susco Car Rental System of Florida v. Leonard, 112 So.2d 832, 835-36 (Fla.1959).
In the instant case, it was undisputed that Interamerican rented the car to Robinson. Therefore, Ming established that Interamerican consented to the use of the car beyond its own immediate control. Theft was not an issue in this case as there was no evidence to show that Leslie intended to steal the rental car. Thus, the issue is whether there was a conversion. To obtain a summary judgment on this issue, the evidence must show the nonexistence *654 of an issue of material fact on the issue of conversion. See Conklin v. Carroll, 865 So.2d 597 (Fla. 2d DCA), rev. dismissed, 871 So.2d 874 (Fla.2004).
In City of Cars, Inc. v. Simms, 526 So.2d 119, 120 (Fla. 5th DCA), rev. denied, 534 So.2d 401 (Fla.1988), we stated that conversion occurs when a person asserts a right of dominion over chattel which is inconsistent with the right of the owner and deprives the owner of the right of possession. In United American Bank of Cent. Florida, Inc. v. Seligman, 599 So.2d 1014, 1017 (Fla. 5th DCA), rev. denied, 613 So.2d 7 (Fla.1992), we ruled that the "tort of conversion constitutes the exercise of wrongful dominion or control of the property to the detriment of the rights of its actual owner. The essence of the tort cause of action of conversion is the disseisin of the owner or interference with legal rights incident to ownership, such as the right to possession." See also, 12 FLA. JUR.2D CONVERSION AND REPLEVIN § 1 (2005).
The question of whether a vehicle has been the subject of a conversion is a factual one based on the distinct circumstances of each individual case. Hertz Corp. v. Jackson, 617 So.2d 1051, 1054 (Fla.1993). For example, in Thomas v. Atlantic Associates, Inc., 226 So.2d 100 (Fla.1969), Atlantic owned a car and allowed Roberts to use it. While Roberts was out of town, his 13-year-old daughter took his car keys, which were sitting on top of his bedroom dresser, drove the car and caused an accident. At no time prior to the accident was Roberts aware that his daughter ever drove or could drive an automobile. The trial court granted summary judgment in favor of Atlantic and Roberts, finding that the daughter used the car without his consent.
The supreme court quashed the summary judgments, holding that because the car owner consented to the car's use beyond its own immediate control, the real issue was whether the car owner had "in fact been deprived of the incidents of ownership or, as stated elsewhere in Susco, there had been `a breach of custody amounting to a species of conversion or theft.'" Id. at 102, quoting Susco, 112 So.2d at 836. The court reasoned that unlike a house guest who surreptitiously takes the keys to a company car from the employee's dresser while the employee is sleeping, the father's leaving the car home from time to time, where it was used by other members of the household, and leaving the keys on top of his dresser "must have seemed like an open invitation" to his daughter to drive the car. Id. at 103. Accordingly, the court found that a genuine issue of material fact existed regarding the issue of whether the daughter's actions amounted to a conversion.
In Christenson-Sullins v. Raymer, 765 So.2d 955 (Fla. 1st DCA 2000), the plaintiff was injured by a car owned by Raymer but driven by Thorton. The evidence showed that Raymer loaned her car to Bisel. Bisel kept the car at her house, where she lived with her boyfriend, Thorton. Bisel expressly forbade Thorton from using Raymer's car. On the date of the accident, Bisel came home and took a nap. When she awoke, the car was gone. Bisel did not report the car stolen. Hours later, Raymer was notified about the accident by police and attempted to locate Bisel at her home. Raymer later found Bisel playing darts at a bar near her home. The trial court found:
In the case at bar, Raymer consented to the operation of her car beyond her immediate control by permitting Bisel to use her car. Thus, Raymer is liable for damages caused by the use of her car unless a species of theft or conversion is shown. See Susco; Tribbitt [v. Crown Contractors, Inc., 513 So.2d 1084 (Fla. *655 1st DCA 1987)]. Although Thorton did not have permission of either Raymer or Bisel to use Raymer's car and was expressly instructed not to use the car, the record does not show a total absence of a genuine issue of fact entitling Appellees to summary judgment as a matter of law. The record shows Bisel failed to call the police upon discovering the car had been taken without her permission, and was so unconcerned about the allegedly unauthorized use of the car she left her home to frequent a local bar and play darts before discovering the location of the car, which could be interpreted by a jury as inconsistent with Thorton's having taken the car by conversion or theft, and consistent with the absence of a conversion or theft of the car by Thorton. The significance of these facts should be weighed by a jury, and not the trial court. Because an issue of fact remains as to whether Raymer's vehicle was stolen or converted, summary judgment was improper.
765 So.2d at 957.
In this case, the evidence created a genuine issue of material fact about whether Leslie's taking the keys from wherever in her mother's bedroom or bathroom and driving with the purpose of bringing it to her mother's workplace for her mother's use and convenience, amounted to a conversion. Several facts militate against a finding of conversion. First, Leslie used the car during the rental term. Interamerican had no expectation of possessing the car during this time. This fact was significant in Stupak v. Winter Park Leasing, Inc., 585 So.2d 283 (Fla.1991), in which the renter had an accident shortly after the expiration of the rental contract. The supreme court held that a genuine issue of material fact existed on the issue of conversion because the evidence conflicted. The rental agreement stated that vehicles not returned by the due date were considered theft by conversion, but also suggested that the rental company did not treat late returns as thefts or conversions for at least the first twenty-four hours after expiration of the rental term. Accordingly, the rental car company failed to carry its burden for summary judgment. Id. at 284; compare Hertz Corp. v. Jackson, 617 So.2d 1051 (Fla.1993) (affirming summary judgment for rental car company where undisputed evidence showed that accident occurred 12 days after expiration of rental term, company demanded return of car from renter and filed police report for stolen car).
Second, neither Interamerican nor Robinson reported the car to police as a stolen car before or after the accident. Hertz; Christenson-Sullins. Third, Interamerican made no demand to possess the car. Hertz. Fourth, it was undisputed that at the time of the accident, Leslie was driving the car to give it to her mother. This fact suggests that Leslie had no intent to possess the car any longer than necessary to turn it over to her mother, who had authority to use the car.
All of these facts suggest that Leslie's actions did not interfere with or cause detriment to Interamerican's right to possess the car or any other of its ownership rights. Although there were conflicting facts, such as Interamerican's contract provision prohibiting other drivers, the above facts created a genuine issue of material fact sufficient to survive summary judgment. The facts in the instant case are similar to those in Thomas and less egregious than those in Christenson-Sullins, both of which reversed summary judgments.

Robinson's Summary Judgment
With regard to Robinson's summary judgment, Ming first argues that Robinson never pled lack of consent as a *656 defense in her answer and therefore, the court erred by granting summary judgment on an unpled defense. Although Robinson pled the defense of conversion, not lack of consent, she later raised this argument in her motion for summary judgment. Ming never mentioned the lack of pleading in her response to the motion or at the hearing on the motion. Instead, Ming addressed the merits of Robinson's lack of consent argument. Accordingly, the issue was raised by consent. Ming's lack of pleading argument was not preserved.
On the merits, Ming argues that the trial court erred by granting summary judgment for Robinson, because a genuine issue of material fact existed as to whether she explicitly or impliedly consented to Leslie's use of the car. Robinson argues that there was no evidence that she expressly or impliedly consented to Leslie using the car and therefore, summary judgment was appropriate.[1]
There was no evidence that Robinson expressly consented to Leslie's driving the rental car. Thus, Ming has to rely on implied consent. In the absence of express consent, implied consent may be found by circumstantial evidence suggesting that the owner implicitly consented to the use of his vehicle by another. See Bradley v. High, 464 So.2d 1275, 1276 (Fla. 3d DCA 1985). This is a question of fact and any conflicting evidence must be resolved by a jury. Id. A review of the case law reveals that each case must be analyzed on the specific facts and circumstances unique to that case, but at least four factors are commonly found to be significant in determining whether there is evidence of implied consent. Those factors are (1) the driver's prior use of the vehicle[2]; (2) location and accessibility of the keys[3]; (3) existence of a familial relationship *657 between owner and driver[4]; and (4) conduct of the parties after the accident[5].
In Leal v. Nunez, 775 So.2d 974 (Fla. 3d DCA 2000), Leal was injured by a car owned by Nunez and driven by her brother-in-law and employee, Blanco. Blanco had driven the car in the past but no longer had a valid driver's license. Blanco took the keys from Nunez's desk, drove the car without Nunez's permission and had an accident. Leal argued that summary judgment was not appropriate because the car had not been reported stolen, Blanco produced the necessary registration and insurance information and that "common sense" dictated that Blanco had permission to drive the car. The trial court granted summary judgment on the ground that there was no evidence that Blanco had permission to drive the car. The Third District Court of Appeal reversed, noting the familial and business relationship between the driver and the owner, and the behavior of both after the accident and the driver's prior use of the vehicle. The court held that an issue of fact existed regarding consent and that a jury should resolve that issue.
We affirmed a summary judgment in Dooley v. Harris, 714 So.2d 1206 (Fla. 5th DCA 1998), finding no evidence of implied consent. We noted that the driver and owner were only acquaintances. The owner allowed the driver to stay at her home, during which time the driver never used the owner's car. Upon leaving her home for a few days, the owner told the driver that if she needed to go anywhere, the owner's son would drive her. The owner left her car locked in a closed garage and her car keys in her jewelry box. Upon returning home, the owner discovered that her car keys were gone, as were her watch and gold bracelet. When she discovered that the car was missing, the owner filed charges against the driver with the police department. Id at 1207.
In the instant case, when the evidence is viewed in the light most favorable to Ming, it demonstrates a genuine issue of material fact on the issue of implied consent. Leslie had driven her mother's cars in the past with her mother's knowledge and consent. After Leslie's license was suspended, Robinson allowed her to use and possess one of her cars while living at her boyfriend's house. When Leslie moved back in with Robinson, Leslie occasionally would "sneak" her mother's cars out and drive. Robinson's comment, "You know you ain't got no license, you don't need to be driving," taken in the light most favorable to Ming, is hardly an express prohibition.
Leslie was traveling towards her mother's workplace to bring her the car, when the accident occurred. In a written statement to police the day after the accident, Robinson claimed that she was the driver. This is not cogent behavior of a person who did not give implied consent to Leslie to drive the car. The fact that Leslie had driven her mother's vehicles before with her mother's knowledge, the open (although disputed) location of the keys, the familial relationship, the stated purpose of Leslie's trip and her mother's conduct after *658 the accident, all create an issue as to implied consent.
Accordingly, we reverse both summary judgments.
REVERSED.
GRIFFIN, J., concurs specially with opinion.
PLEUS, C.J., concurs in part and dissents in part with opinion.
GRIFFIN, J., concurring specially.
This is a close case, but I think there is some evidence of implied consent. Leslie had driven her mother's cars in the past with her mother's knowledge and consent. After Leslie's license was suspended, Callie allowed her to use and possess one of her cars while living at her boyfriend's house. When Leslie moved back in with Callie, Leslie would "sneak" her mother's cars out and drive. On at least one occasion, when Callie found out about this she said to Leslie, "You know you ain't got no license, you don't need to be driving," not what I would call an express prohibition as a matter of law.
On the day of the accident, Leslie knew her mother was not able to find her keys and had to get a ride to work. She also knew her mother had a doctor's appointment. She found the missing car keys and claims she decided to drive the car to her mother's workplace so her mother could use the car to go to the doctor. She was traveling toward her mother's workplace when the accident occurred.
PLEUS, C.J., concurring in part, dissenting in part.
I concur in the majority's reversal of the summary judgment in favor of Callie Robinson as there was a genuine issue of fact regarding whether Callie impliedly consented to Leslie's use of the vehicle. However, I respectfully dissent to the reversal of the summary judgment in favor of Interamerican based on the defense of conversion. While I agree with the majority's recitation of the law, I disagree with its application of the law to the facts of this case. The majority concludes a fact issue existed as to whether Leslie's use of the car amounted to a conversion. To support this conclusion, the majority relies on the following evidence: (1) Leslie used the car during the rental term; (2) neither Interamerican nor Robinson reported the car to police as stolen before or after the accident; (3) Interamerican made no demand to possess the car; and (4) Leslie was driving the car to give it to her mother. These facts do not persuade me that there was conflicting evidence of conversion.
Although a driver's use of a rental vehicle beyond the rental term may constitute evidence of conversion, the mere fact of Leslie's use of the car during the rental term does not prove the converse. Instead, it would seem logical to me that conversion may be proven in cases where unauthorized use occurs during the rental term, depending on whether the terms of the rental agreement clearly and unambiguously prohibit the unauthorized use so as to constitute a detriment to the rights of the owner. In this case, the rental contract clearly and unambiguously prohibited anyone but Callie Robinson from driving the rental car. Leslie's use of car violated this contract term. Interamerican did not and would not have agreed to allow Leslie, whose license was suspended, to drive their car. The fact that she drove the car was detrimental to their ownership rights because of the unreasonable risk that such a driver would cause damage to its car or to other persons or property while driving the car. As it turned out, that is exactly what happened. Therefore, while I acknowledge that a rental car company may be held liable for damages resulting from unauthorized use of a rental car, even if contrary to the express terms of the rental *659 agreement, the mere fact that the use occurred during the rental term does not support the position that the use did not amount to conversion.
As for the failure to report the car stolen and the failure of Interamerican to demand possession, a simple but important fact distinguishes this case from those relied upon by the majority. Neither Callie Robinson nor Interamerican knew that Leslie was using the vehicle prior to the accident. Unlike the renter in Christenson-Sullins v. Raymer, 765 So.2d 955 (Fla. 1st DCA 2000), Callie Robinson never had an opportunity to report the car stolen prior to the accident. And unlike the rental car company in Stupak v. Winter Park Leasing, Inc., 585 So.2d 283 (Fla.1991), which had an opportunity to demand possession but failed to do so, Interamerican never had an opportunity or a reason to demand possession prior to the accident. Thus, the failure to report the car stolen or demand possession, where there was no opportunity or reason to do so, does not create an issue of fact regarding conversion.
The final fact relied upon by the majority was that Leslie was driving the car to give it to her mother. The majority fails to cite any authority for the assertion that the purpose or intent behind the unauthorized use may be considered in determining whether a conversion occurred. While Leslie's intent in using the car may have been limited to delivering it to her mother, the truly undisputed fact is that any use by Leslie represented an unbargained-for, and unreasonable risk for Interamerican to assume. In that sense, her use, for whatever purpose, amounted to a conversion. Accordingly, I would affirm the summary judgment in favor of Interamerican.
NOTES
[1] Both parties analyze this issue in terms of express or implied consent. These are the terms used in the general rule of liability for an owner who gives authority to another to operate his vehicle, by either express or implied consent, has a nondelegable obligation to ensure that the vehicle is operated safely. Conklin, 865 So.2d at 598. Robinson was a bailee, not an owner. The rule for bailees uses slightly different terminology, but essentially, it is the same test. See Frankel v. Fleming, 69 So.2d 887, 888 (Fla.1954) (holding that bailee was liable for injury caused by the one to whom he entrusted the car); Re-Mark Chemical Co. v. Ross, 101 So.2d 163, 165 (Fla. 3d DCA 1958) (holding that one who has possession, dominion and control of an automobile, though not the record owner thereof, is liable for injury caused by the negligence of another person using the automobile with the knowledge and consent of the person having such dominion and control over the vehicle). Although the terms "express or implied consent" are different from the terms "entrust" and "knowledge and consent," it is clear that Florida Courts use the terms interchangeably in this context and therefore determine a bailee's liability in the same manner as they would an owner. See State Farm Mut. Auto. Ins. Co. v. Clauson, 511 So.2d 1085 (Fla. 3d DCA 1987) ("To the same extent as the owner, a bailee (or sub-bailee) of a motor vehicle is liable to third persons under the dangerous instrumentality doctrine for the negligence of one to whom he has entrusted it").
[2] Implied consent may be shown by evidence that the operator used the owner's vehicle in the past with the owner's knowledge and consent. SEE 4A FLA. JUR. 2D AUTOMOBILES AND OTHER VEHICLES § 632 (2005), citing Hastings v. Taylor, 130 Fla. 249, 177 So. 621 (1937) (upholding denial of directed verdict on issue of implied consent based in part on operator's prior use of car with owner's knowledge and consent).
[3] See, e.g., Pearson v. St. Paul Fire and Marine Ins. Co., Inc., 187 So.2d 343 (Fla. 1st DCA 1966) (affirming a summary judgment for vehicle owner, finding that the driver who entered the bedroom of sleeping sister and her husband, and surreptitiously took the keys to the husband's company automobile to drive on a personal errand, did not have implied consent to operate the vehicle).
[4] To a lesser extent, familial relationships have been recognized as a factor in the implied consent analysis. See Leal v. Nunez, 775 So.2d 974 (Fla. 3d DCA 2000) (reversing summary judgment on issue of implied consent based in part on familial and business relationship between driver and owner).
[5] See Hastings, 177 So. at 622 (noting that at time of accident, owner went home to sleep, then later took driver from the hospital); Leal, 775 So.2d at 974 (stating that behavior of owner and driver after the accident raised serious questions about consent).