ALTENBERND, Judge.
James B. Stanford appeals a final summary judgment determining that Paul George Chagnon is not liable under the dangerous instrumentality doctrine for the alleged negligent operation of his pickup truck by Dena Morgan Pace, his adult, nonresident stepdaughter. We reverse because the record does not establish that there is no disputed issue of material fact and that Mr. Chagnon is entitled to judgment as a matter of law.
In November 2009, Ms. Pace was driving Mr. Chagnon’s pickup truck when she allegedly made a left-hand turn in front of Mr. Stanford, causing an accident in which he sustained injuries. In February 2010, Mr. Stanford filed a negligence action against Ms. Pace, as the driver, and Mr. Chagnon, as the owner.
A law firm whose attorneys are employed by GEICO General Insurance Company filed an appearance on behalf of both defendants. The lawyers from GEICO filed an answer admitting that Mr. Chag-non owned the truck and that Ms. Pace was operating the vehicle with his permission and consent. They also responded to a request for admissions on behalf of Ms. Pace admitting that she was a permissive user of the vehicle.
About six months later, Mr. Stanford’s attorney took the depositions of Ms. Pace and Mr. Chagnon. Mr. Chagnon testified that he owned the truck and that, at the time of the accident, he was at work and thought the truck was parked in his carport at home. Although he had allowed his stepdaughter to drive this truck on more than ten occasions in the past, he had not given her permission to drive the truck on the day of the accident.
Mr. Chagnon’s deposition is very brief. Mr. Stanford’s lawyer did not establish the location of the keys to the truck for the relevant period. He did not ask who may have been in charge of the truck when Mr. Chagnon was at work. He did not go into any detail about the multiple occasions in the past when Ms. Pace had been allowed to drive the truck. We do not criticize Mr. Stanford’s attorney in this regard because Mr. Chagnon and his stepdaughter had already admitted that Mr. Chagnon owned the truck and that Ms. Pace was a permissive user. The GEICO lawyer, who appeared on behalf of both defendants, did not ask any questions, apparently aware that she had developed a conflict in this joint representation.
The deposition of Ms. Pace is equally brief and contains only a few questions concerning her permissive use of the truck. At the time of the accident, Ms. Pace no longer lived with her mother and stepfather, but she apparently lived near *567 by and did not own a vehicle of her own. When asked how she came to be driving her stepfather’s vehicle, Ms. Pace answered, “I was supposed to have returned it, and when I went to go return it my mother was — she was sleeping or whatever, so I took it upon myself to keep it.” She admitted that she did not have her stepfather’s permission to drive the vehicle “that day.” The accident happened while she was driving to a drugstore to shop. Again, the GEICO lawyer who was representing Ms. Pace and her stepfather asked no questions. Ms. Pace’s testimony suggests or implies that she had obtained this vehicle the day before this accident and did not return it on the day of the accident. She does not explain whether she had been given permission to use the truck at some earlier time and had simply kept it longer than expected.
Following these depositions, in early November 2010 the GEICO lawyers withdrew from this case and, oddly, another law firm appeared on behalf of both defendants. Within a month, that law firm recognized its conflict. It withdrew only from the representation of Ms. Pace, and a third law firm appeared on her behalf.
Renee Chagnon is the mother of Ms. Pace and the wife of Mr. Chagnon. Her deposition was taken after the new attorneys appeared in this case. This deposition is longer and focuses on the issue of Ms. Pace’s permissive use of the vehicle. It is clear from this deposition that Mrs. Chagnon thinks her husband is very protective of his truck, that he does not like others to drive it, and that he was not happy about the situation. As she explained, “He wanted to hang me for giving her the keys to the truck.”
According to his wife, Mr. Chagnon would leave the truck parked at home with the keys hanging on the wall in a location designated for keys. She admitted that on prior occasions she had given her daughter permission to drive this truck “behind his back.” On this occasion, Mrs. Chagnon was “sick that day” and did not remember whether she had given her daughter permission to drive the truck. When asked if she had permission from Mr. Chagnon to take the truck whenever she wanted and loan it out without telling him about it, she answered, “Well, my mother always told me this: You never let your right hand know what your left hand is doing.” She revealed that when her husband received the papers for the lawsuit, he was so mad he wanted to divorce her over it. She added, “He’s trying to throw his authority at me because I allowed her to take his truck. Well, I’m sorry. If she needed to borrow the truck, she borrowed it. He will have to get over it.”
From this testimony, it appears undisputed that Mr. Chagnon did not give his express personal permission for his stepdaughter to drive this vehicle on the day of the accident, but it is entirely possible that her mother had general access to this truck and freely allowed her to use the vehicle on the day before the accident; Ms. Pace simply had not yet returned the vehicle when this accident occurred.
Following this deposition, the lawyers representing Mr. Chagnon moved to amend his answer to the complaint to contest permissive use and also moved for summary judgment based on these depositions. The trial court allowed Mr. Chag-non to amend his answer, but Ms. Pace’s answer remained unchanged, including her admission to the allegation in the complaint that she had permission to drive the truck. Additionally, no one sought relief under Florida Rule of Civil Procedure 1.370(b) from the effect of Ms. Pace’s admission that had been provided in the response to the request for admissions. The trial court, nonetheless, granted the mo *568 tion for summary judgment and entered judgment based on the content of the depositions. Mr. Stanford then appealed.[1]
We cannot conclude that these depositions adequately support a summary judgment, especially in the face of the admission in the record from Ms. Pace that would conflict with some of the testimony in her brief deposition. Even without regard to the admission by Ms. Pace, if Mrs. Chagnon is a bailee of the motor vehicle when it is left at home with its keys in the designated location on the wall, then it is possible that she is liable in this context for her bailment to her daughter and that her husband is liable in turn as her bailor. As succinctly stated by Judge Schwartz, writing for the Third District:
To the same extent as the owner, a bailee (or sub-bailee) of a motor vehicle is liable to third persons under the dangerous instrumentality doctrine for the negligence of one to whom he has entrusted it. Frankel v. Fleming, 69 So.2d 887 (Fla.1954); Brown v. Goldberg, Rubenstein & Buckley, P.A., 455 So.2d 487 (Fla. 2d DCA 1984), pet. for review denied, 461 So.2d 114 (Fla.1985); 4 Fla. Jur. 2d Automobiles and Other Vehicles § 292 (1978).
State Farm Mut. Auto. Ins. Co. v. Clauson, 511 So.2d 1085, 1086 (Fla. 3d DCA 1987).
The parent-child relationship alone cannot be used as an independent basis for holding parents vicariously liable for the use of a motor vehicle by a child. Aurbach v. Gallina, 753 So.2d 60, 66 (Fla.2000). Nevertheless, in the context of family automobiles used by other family members, the courts have hesitated to declare that the owner, as a matter of law, did not give express or implied consent to the family member who was operating the vehicle at the time of an accident. See Thomas v. Atlantic Assocs., Inc., 226 So.2d 100 (Fla.1969); Ming v. Interamerican Car Rental, Inc., 913 So.2d 650 (Fla. 5th DCA 2005). In regard to rental vehicles, the supreme court has held the owner responsible under the dangerous instrumentality doctrine unless the breach of custody amounts to a species of conversion or theft. See Susco Car Rental Sys. of Fla. v. Leonard, 112 So.2d 832, 835-36 (Fla.1959).[2] While the standard may not be quite that high for a family car, we believe it is premature to grant summary judgment in favor of Mr. Chagnon on the basis of this record.
Reversed and remanded.
VILLANTI and LaROSE, JJ., Concur.

. After the entry of the final summary judgment but before the filing of the notice of appeal, Mr. Stanford filed with the trial court a notice of voluntary dismissal as to Ms. Pace. The reasons for that dismissal are not disclosed in this record. No one has appeared on behalf of Ms. Pace in this appeal, and the parties participating in this appeal have taken no position on whether she should be regarded as a party to this appeal under the unusual procedural posture of this case. To the extent that the summary judgment is adverse to Ms. Pace, given that she was a party at the time the judgment was rendered, we are inclined to believe that she is entitled to be a party to this appeal. However, we see no reason to resolve this thorny issue at this time; whether she is or is not a party to this appeal, the adverse ruling that we reverse in this opinion should not be binding on Ms. Pace.

. Since 1959, the statutory law governing rented and leased vehicles has become quite complex, but the supreme court has not altered its position on the dangerous instrumentality doctrine. See Chandler v. Geico Indem. Co., 78 So.3d 1293 (Fla.2011).