796 So.2d 593 (2001)
David DOCKERY, Appellant,
v.
ENTERPRISE RENT-A-CAR COMPANY, a foreign corporation, Appellee.
No. 4D00-2512.
District Court of Appeal of Florida, Fourth District.
September 12, 2001.
Rehearing Denied October 25, 2001.
*594 Randall W. Henley of Randall W. Henley, P.A., West Palm Beach, for appellant.
Esther E. Galicia and Jennifer P. Huber of George, Hartz, Lundeen & Fulmer, Fort Lauderdale, for appellee.
TAYLOR, J.
The plaintiff below sued Enterprise Rent-A-Car Company (Enterprise) for injuries resulting from an accident involving a vehicle owned by Enterprise. The trial court directed a verdict for Enterprise, because no evidence was available to show *595 how the driver obtained possession of the rented vehicle. The issue we address in this appeal is who, under Florida's dangerous instrumentality doctrine, has the burden of proving that the rented vehicle was stolen or converted before the accident, once the plaintiff has established the owner's initial consent through its rental agreement. Based on Susco Car Rental System of Florida v. Leonard, 112 So.2d 832 (Fla.1959), we conclude that the owner has the burden of showing that "a species of conversion or theft" of the vehicle occurred in order to avoid liability for the accident. Because no proof was presented in this case to show that the vehicle was converted or stolen after the owner rented the vehicle, we reverse the directed verdict entered in favor of the rental company.
On August 8, 1997, David Dockery, the plaintiff below, was riding his bicycle in the crosswalk at the intersection of Palm Beach Lakes Boulevard and Sapodilla in West Palm Beach, Florida when he was struck by a vehicle operated by George Anthony Brown (Brown). The vehicle was owned by Enterprise and had been rented to Barlington Blye (Blye) earlier on the day of the accident. The Enterprise rental agreement provided that Blye was the only authorized driver and that no other drivers were to use the vehicle without Enterprise's approval.
The plaintiff sued Enterprise and the driver, Brown, for injuries he allegedly suffered as a result of the accident.[1] At trial, the parties stipulated to the following: (1) Enterprise rented the subject vehicle to Barlington Blye; (2) George Brown was driving the vehicle that struck appellant; and (3) there was no evidence from either side as to how Brown obtained the Enterprise vehicle.[2]
After jury selection, the parties requested the trial court to determine the plaintiffs burden of proof under Florida's dangerous instrumentality doctrine. Plaintiff argued that, although he was required to show consent from the owner, Enterprise, to the renter, he did not have to show consent from the renter of the vehicle to the driver. He contended that once he proved consent from Enterprise to the renter, Enterprise had to prove that the driver stole or converted the vehicle to escape liability.
Enterprise argued that the plaintiff had the burden of proving that the driver had consent of the owner under the dangerous instrumentality doctrine; hence, the plaintiff had to prove not only that Enterprise consented to the renter's use of the vehicle but also that the renter gave consent to the driver. In support of this position, Enterprise pointed out that Florida Standard Jury Instruction 3.3 requires the jury to determine whether the driver, Brown, was operating the Enterprise vehicle at the time of the accident with Enterprise's express or implied consent.[3] Because the *596 plaintiff was unable to present any evidence as to how Brown obtained the vehicle, Enterprise argued that the plaintiff could not establish a prima facie case of consent and, thus, the burden would not shift to Enterprise to prove that the vehicle was stolen or converted. The trial court agreed that the plaintiff could not show that the driver was operating the rented vehicle with consent "simply by showing that the rental car company rented to someone" and granted a directed verdict for Enterprise.
Under Florida's dangerous instrumentality doctrine, the owner of a motor vehicle is liable to third persons for injuries caused by the negligent operation or use of the motor vehicle by the person to whom the owner entrusted the vehicle. See Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629, 637 (1920). The doctrine is based upon the view that motor vehicles are dangerous instrumentalities when operated upon the public highways; consequently, the owners of motor vehicles are obligated to ensure that their vehicles are properly operated when on the public highway under their authority. See Barth v. Miami, 146 Fla. 542, 1 So.2d 574 (1941). Since adopting the dangerous instrumentality doctrine in 1920, Florida courts have repeatedly applied the doctrine, with very few exceptions.[4] Recently, the Florida Supreme Court re-affirmed the important public policies underlying its adoption. See Aurbach v. Gallina, 753 So.2d 60, 62 (Fla.2000)(quoting Kraemer v. Gen. Motors Acceptance Corp., 572 So.2d 1363, 1365 (Fla.1990)). As Justice Grimes wrote in Kraemer:
The dangerous instrumentality doctrine seeks to provide greater financial responsibility to pay for the carnage on our roads. It is premised upon the theory that the one who originates the danger by entrusting the automobile to another is in the best position to make certain that there will be adequate resources with which to pay the damages caused by its negligent operation. If Florida's traffic problems were sufficient to prompt its adoption in 1920, there is all the more reasons for its application to today's high-speed travel upon crowded highways.
572 So.2d at 1365.
As explained above, liability attaches to the owner of a motor vehicle for damages caused by the vehicle's negligent operation because the owner who gives authority to another to operate the owner's vehicle, by either express or implied consent, has a nondelegable obligation to ensure that the vehicle is operated safely. See Hertz Corp. v. Jackson, 617 So.2d 1051, 1053 (Fla.1993). Public policy favors holding the owner liable, since the owner has the capacity to protect the safety of the public by not relinquishing control of his vehicle to another person. See Union Air Conditioning, Inc. v. Troxtell, 445 So.2d 1057 (Fla. 3d DCA 1984). Because the basis for holding the owner liable for damages is the owner's knowledge and consent in "entrusting the automobile to another," knowledge and consent of the owner are essential elements in establishing the owner's liability and must be proven before the owner can be held liable for damages proximately caused by the negligent driver. See Pearson v. St. Paul Fire & Marine Ins. Co., 187 So.2d 343 (Fla. 1st DCA 1966); see also Slitkin v. Avis Rent A Car Sys., Inc., 382 So.2d 883 (Fla. 3d DCA 1980).
*597 The plaintiff agreed that he had to prove the owner's consent in order to hold the owner vicariously liable, but, relying on Susco, he urged the trial court to find that he satisfied this burden of proof by showing Enterprise's initial consent to the renter's use of the vehicle. After showing Enterprise's original consent, he argued, the burden shifted to Enterprise to prove that a theft or conversion of the vehicle occurred before the accident.
The Florida Supreme Court broadly defined the "owner's consent" under the dangerous instrumentality doctrine in Susco. The court emphasized that, "while the rule governing liability of an owner of a dangerous agency who permits it to be used by another is based on consent, the essential authority or consent is simply consent to the use or operation of such an instrumentality beyond his own immediate control." Susco, 112 So.2d at 837. The court explained that "when control of [a rental automobile] is voluntarily relinquished to another only a breach of custody amounting to a specie of conversion or theft will relieve an owner of responsibility for its use or misuse." Id. Thus, for an owner to escape liability after putting a car in circulation, it must be shown that a breach of custody occurred which "deprived the owner of the incidents of ownership." Id.
In Susco, an individual named Salicetti rented an automobile from Susco Car Rental System of Florida, Inc. Under the rental contract, Salicetti agreed that no one other than himself would drive the automobile without the express consent of the rental agency. The automobile was involved in an accident while being driven by someone other than Salicetti. The issue before the Susco court was whether the rental agreement prohibiting additional drivers relieved the rental company of liability under the dangerous instrumentality doctrine. The court held that it did not. It determined that even though the rental company did not actually "consent" to the negligent driver's operation of its vehicle, it did voluntarily relinquish control of the automobile to another and consent to use or operation of its vehicle beyond its own immediate control. Concluding that the rental agreement restrictions did not negate the rental company's consent, the court stated:
[W]hatever may have been the deviations from this course, the logical rule, and, we think, the prevailing rationale of the cases, is that when control of such a vehicle is voluntarily relinquished to another, only a breach of custody amounting to a species of conversion or theft will relieve an owner of responsibility for its use or misuse. The validity or effect of restrictions on such use, as between the parties, is a matter totally unrelated to the liabilities imposed by law upon one who owns and places in circulation an instrumentality of this nature.
* * * *
In the final analysis, while the rule governing liability of an owner of a dangerous agency who permits it to be used by another is based on consent, the essential authority or consent is simply consent to use or operation of such an instrumentality beyond his own immediate control. Only to that limited extent is the issue pertinent when members of the public are injured by its operation, and only in a situation where the vehicle is not in operation pursuant to his authority, or where he had in fact been deprived of the incidents of ownership, can such an owner escape responsibility. Certainly the terms of a bailment, either restricted or general, can have no bearing upon that question.
Id. at 835-37: see also Tribbitt v. Crown Contractors, Inc., 513 So.2d 1084, 1086 *598 (Fla. 1st DCA 1987)(noting that in Susco the real issue was whether the owners had in fact been deprived of the incidents of ownership, i.e., whether there had been a breach of custody amounting to a species of conversion or theft).
In Thomas v. Atlantic Associates., 226 So.2d 100 (Fla.1969), the supreme court quoted language from Susco when ruling that a summary judgment for a vehicle owner was improper where a genuine issue of fact existed as to the driver's consent. In Thomas, Atlantic owned a motor vehicle and allowed its employee, Roberts, unrestricted use of the vehicle. While Roberts was out of town on a trip, his thirteen-year-old daughter took the car keys, which Roberts customarily left on his bedroom dresser, drove the car, and caused an accident. Roberts was unaware that his daughter had ever driven or knew how to drive, although she had been driving her grandmother's car in a different household. The trial court entered summary judgment for the defendants, Atlantic and Roberts, determining that the undisputed facts showed that the daughter used the automobile without their express or implied consent. It also found that Roberts was not negligent in leaving the keys to the vehicle on his dresser. The supreme court quashed the district court's affirmance, stating that "since it affirmatively appeared that the owner had given its consent to the use or operation of the automobile beyond its own immediate control, the only real issue was whether the owner had `in fact been deprived of the incidents of ownership' or, as stated elsewhere in Susco, there had been a `breach of custody amounting to a species of conversion or theft.'" Id. at 102 (construing Susco, 112 So.2d at 836-37).
More recently, in Hertz, the Supreme Court of Florida re-affirmed the Susco principle that to vitiate the owner's initial consent and deem the vehicle "no longer on the public highways by authority of the owner," the vehicle must be shown to have been the subject of a theft or conversion. Hertz, 617 So.2d at 1053. There, the supreme court examined the particular facts and circumstances surrounding a car rental to determine whether a theft or conversion occurred so as to relieve the rental company from liability. The facts reflected that:
(1) the car was rented for two days and was never returned to Hertz; (2) twelve days after the car was rented, Hertz was informed it was rented by use of a stolen credit card; (3) Hertz attempted to recover the vehicle by forwarding certified mail notice to the renters in accordance with Metro-Dade Police rules; (4) after the certified mail notices were returned and two months after the car was rented, Hertz reported the car stolen; and (5) the accident occurred eleven days after the vehicle was reported stolen and almost two and one-half months after it was initially rented.
Id. at 1054. Concluding that these facts established that the vehicle was converted and stolen, the supreme court quashed the decision of the Third District Court of Appeal finding Hertz liable as a matter of law because of its initial consent to the use of the vehicle by another. Hertz clarified that the owner's liability under the dangerous instrumentality doctrine does not depend solely on the issue of whether there was an initial act of consent to use the vehicle. Rather, liability is determined on the basis of whether a conversion or theft occurred under the circumstances of the case prior to the negligent operation of the vehicle so as to vitiate the owner's initial consent and relieve the owner of liability. "The question of whether a vehicle has been the subject of a conversion or theft is a factual one that ordinarily is answered *599 on the distinct circumstances of each individual case." Id. After reviewing the circumstances in Hertz, the court determined that the trial court properly directed a verdict for the rental company upon "unrefuted facts that supported a conclusion that a conversion or theft had occurred." Id.
In this case, the rental company presented no proof whatsoever that the rented vehicle was stolen or converted before the accident. Yet, the stipulated facts before the trial court clearly showed that Enterprise had consented to use and operation of the vehicle "beyond its own immediate control." Id. According to Susco and Hertz, the only "real" issue remaining after this initial consent was shown was whether the vehicle was stolen or converted before the accident. As there was no evidence of theft or conversion to nullify Enterprise's vicarious liability, the trial court erred in directing a verdict in favor of Enterprise. See Stupak v. Winter Park Leasing, Inc., 585 So.2d 283 (Fla.1991)(genuine issue of material fact existed as to whether the lessee's use of the automobile past the contract's expiration constituted theft or conversion which would nullify the owner's vicarious liability); Christenson-Sullins v. Raymer, 765 So.2d 955 (Fla. 1st DCA 2000)(holding that genuine issue of material fact existed as to whether the owner's automobile was stolen or converted by the boyfriend of the friend to whom the owner had loaned her vehicle, thus precluding summary judgment for owner).
Enterprise argued that because the plaintiff was unable to meet his initial burden of proving that the driver operated the rented vehicle with the consent of Enterprise or the renter, the issue of whether a theft or conversion occurred could not reach the jury. However, as the supreme court pointed out in Susco and confirmed in Thomas, the essential authority or consent which underlies the dangerous instrumentality doctrine is simply consent to the use or operation of the vehicle beyond the owner's immediate control. The plaintiff met this initial burden of showing consent when he established Enterprise's voluntary relinquishment of control of the vehicle to the renter. Thereafter, no direct or circumstantial evidence was presented which could be interpreted by a jury as consistent or inconsistent with theft or conversion of the car. Mere evidence that the driver was operating the vehicle without Enterprise's knowledge and consent failed to eliminate the issue whether the driver's operation constituted a species of conversion or theft. See Tribbitt v. Crown Contractors, Inc., 513 So.2d (Fla. 1st DCA 1987)(an owner can be held liable where the person to whom he entrusts his vehicle uses it in a manner or for a purpose in violation of the terms of the entrustment, such as by permitting an unauthorized person to operate the vehicle; the mere use of the vehicle by another without the knowledge or consent of the owner or the bailee does not establish conversion or theft as a matter of law); Avis Rent-A-Car Sys., Inc. v. Garmas, 440 So.2d 1311 (Fla. 3d DCA 1983)(operation of rental car by unlicensed renter in violation of express agreement with rental car company, which provided that only renter's licensed companion could drive the car, was a breach of the terms of bailment, but was not a species of conversion or theft which would insulate rental car company from liability for injuries caused by renter's negligent driving).
When a judgment based on a directed verdict is appealed, this court must read the evidence in a light most favorable to the party against whom the verdict is directed, resolving every conflict and inference for that party. Hand v. Hustad, 440 *600 So.2d 518 (Fla. 4th DCA 1983); In re Estate of Koll, 445 So.2d 1147 (Fla. 4th DCA 1984); Tesher & Tesher, P.A. v. Rothfield, 387 So.2d 499 (Fla. 4th DCA 1980). Viewed in a light most favorable to the plaintiff, with all inferences resolved for him, the evidence in this case showed that Enterprise consented to the renter's use and operation of the vehicle and that Enterprise's original consent was still present at the time of the accident. There was no information presented to the contrary; Enterprise offered no evidence upon which a jury could determine that the vehicle was stolen or converted at the time of the accident. Cf. Barnett v. State Farm Fire & Cas. Co., 775 So.2d 395 (Fla. 4th DCA 2000)(owner and lessor of automobile were not vicariously liable for the deceased's death where third party took the vehicle, in which the deceased was a passenger, without the express or implied consent of owner of lessor and jury found, based on competent evidence, that there was a species of conversion or theft as contemplated by Susco).
Enterprise cited Slitkin in arguing that the plaintiff had the burden of showing that the driver was operating the vehicle with its consent for it to be held liable under the dangerous instrumentality doctrine. Slitkin, 382 So.2d at 883. However, the facts in Slitkin are distinguishable, because in that case the plaintiff presented no proof that the rental agency gave anyone consent to operate its vehicle at any time. The evidence showed only that the automobile was owned by Avis and that it crashed into the plaintiff's house and his parked automobile. As the third district observed, "at trial Slitken proved only the occurrence of the accident and the damage which ensued." Id. On these facts, the third district upheld a directed verdict for Avis. The court ruled that the plaintiff failed to satisfy its burden of proving consent. Citing Pearson, the court explained that it was necessary to allege more than mere proof of ownership of a vehicle involved in an accident.[5] The plaintiff had to also allege facts related to authority or consent before the burden would shift to the defendant to establish an absence of consent. See id.
In contrast to Slitkin, the plaintiff in this case showed more than just Enterprise's ownership of the vehicle. Through stipulated facts, he established that Enterprise rented the vehicle and consented to another's use and operation of the vehicle. He thus met his initial burden under Susco of showing that Enterprise voluntarily placed the vehicle beyond its own immediate control. Although Susco does not discuss which party has the burden of proving a theft or conversion exception, its language strongly suggests that theft or conversion is an affirmative defense that must be proven by the owner to "escape" liability after it is shown that the owner consented in the first instance to relinquishing possession and control of the vehicle to another. We agree with the plaintiff that this is a reasonable and logical interpretation of Susco. Accordingly, we hold that the plaintiff in this case made out a prima facie case of owner vicarious liability once he established that Enterprise rented out the vehicle and consented to its use and operation by another (Blye) "beyond its own immediate control." Then, the burden shifted to Enterprise to relieve itself of liability by coming forward with competent evidence to show that its vehicle *601 was stolen or converted before the accident.
We believe that this order of proof is consistent with Susco and the underlying rationale of the dangerous instrumentality doctrine, which hold an automobile owner accountable for entrusting a vehicle to another unless the owner was "deprived of the incidents of ownership" by theft or conversion. In addition to the doctrine's important public policies, traditional tort law objectives and notions of fairness make it more reasonable to require the owner to prove the car's theft or unauthorized use after the initial consent to another is shown, rather than to place the burden on an innocent injured plaintiff to prove the absence of a theft or conversion. As a practical matter, owners, particularly those engaged in the business of renting vehicles for profit, are better equipped and more financially motivated to track the path of their vehicles after placing them in the stream of commerce than a third-party stranger whose only contact with the vehicle is through an unexpected collision.
Because Enterprise did not present any evidence that a theft or conversion of its vehicle occurred after it consented to the renter's use and operation of the vehicle, and because the parties stipulated that no such evidence was available, the trial court improperly entered a directed verdict in Enterprise's favor. Accordingly, we reverse and remand for further proceedings consistent with this opinion.
REVERSED and REMANDED.
FARMER, J., concurs.
KLEIN, J., dissents with opinion.
KLEIN, J., dissenting.
I cannot agree with the majority that the burden of showing theft was on Enterprise. In Susco Car Rental System of Florida v. Leonard, 112 So.2d 832 (Fla. 1959), the sole authority for this proposition, there was no theft. Nor was burden of proof an issue.
In Susco the Florida Supreme Court quoted from Anderson v. Southern Cotton Oil Co., 73 Fla. 432, 74 So. 975, 978 as follows:
The liability [of the owner] grows out of the obligation of the owner to have the vehicle * * * properly operated when it is by his authority on the public highway. (emphasis supplied.)
Susco, 112 So.2d at 836. Prior to Anderson the owner was not liable for the negligence of the driver. Anderson made the owner liable if the vehicle was being operated with the owner's consent.
The burden of proof that the vehicle was being operated with the consent of the owner has always been on the plaintiff. Pearson v. St. Paul Fire & Marine Ins. Co., 187 So.2d 343 (Fla. 1st DCA 1966); Slitkin v. Avis Rent A Car System, Inc., 382 So.2d 883 (Fla. 3d DCA 1980). The form complaint provided in Florida Rule of Civil Procedure form 1.945 contains a provision for plaintiff to allege the motor vehicle was operated with the consent of the owner, and the complaint in this case contains that allegation.
The effect of the majority's opinion is to create a presumption of consent in all cases, not just rental car cases, which the owner can rebut by proving that the vehicle was stolen. If that was what our supreme court meant in Susco, I would have thought that, in the forty years since Susco was decided, a Florida court would have been confronted with the issue.
In my opinion the holding of the majority is a change in the law which this court is not authorized to make. Hoffman v. Jones, 280 So.2d 431 (Fla.1973). I am not necessarily against such a change, as the owner of a vehicle is normally in the best *602 position to know whether a vehicle has been stolen, but whether that policy is a better one than we presently have is something I would leave up to our supreme court.
NOTES
[1] A default was entered against Brown for failure to serve a pleading.
[2] The record reflects that Defendant Brown pled guilty to leaving the scene of an accident involving injury.
[3] Fla. Std. Jury Instr. (Civ.) 3.3

ISSUES AS TO VICARIOUS LIABILITY
The [first] [next] issue for your determination on the claim of (claimant) against (defendant) on account of the alleged negligence of (name) is:
a. Owner or person in control of vehicle driven by another:
whether (defendant) [owned] [or] [had the right to control] the vehicle driven by (driver) and whether (driver) was operating the vehicle with the express or implied consent of (defendant). A person who [owns] [or] [has the right to control] a vehicle and who expressly or impliedly consents to another's use of it is responsible for its operation.
[4] See generally Sarah E. Williams, Comment, Florida's Dangerous Instrumentality Doctrine, 25 Stetson L.Rev. 177 (1995).
[5] The court noted that Slitkin's "argument that the burden in upon [Avis] to establish that the vehicle was being operated without its consent [came] thirteen years too late" as the former section 51.12, Florida Statutes, which made non-consent an affirmative defense, was repealed in 1967. Id. at 883 n. 2.