900 So.2d 608 (2005)
RYDER TRS, INC., Appellant,
v.
Patricia HIRSCH, Lisa Marie Ann Hesse, and College Park Texaco, Inc., Appellees.
No. 4D03-1426.
District Court of Appeal of Florida, Fourth District.
March 2, 2005.
Opinion Denying Rehearing, Rehearing and Certification May 11, 2005.
*609 Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A., West Palm Beach and Roderick McGee of Ligman & Martin, P.L., Miami, for appellant.
Julie H. Littky-Rubin of Lytal, Reiter, Clark, Fountain & Williams, LLP, West Palm Beach, and Jeffrey A. Shaffer of Mintmire & Associates, Palm Beach, for appellees.
Opinion Denying Rehearing, Rehearing En Banc and Certification May 11, 2005.
MAY, J.
The defendant appeals a final judgment entered on a jury verdict in an automobile accident case. We limit our opinion to the trial court's jury instruction on conversion as it relates to the dangerous instrumentality doctrine and affirm.
Art Saxon had previously rented trucks from College Park Texaco. Rennard Sughrim, an employee of College Park Texaco, loaned Saxon a truck owned by Ryder without executing a formal written agreement. Under the informal arrangement, Saxon paid Sughrim weekly rent, but he stopped paying after several weeks. Nevertheless, Sughrim allowed Saxon to keep the vehicle. Saxon later used his mother's credit card to make some of the payments. The same card was subsequently charged another $6,000 for use of the truck without the mother's knowledge. Saxon did not have a valid driver's license.
Sughrim ultimately reported the truck "lost." The officer taking the police report testified that Sughrim wanted to locate the truck or get the money from Saxon. When Sughrim later spoke to Saxon, he was advised he would be paid the money owed.
Law enforcement contacted Saxon about the truck, advised him that it had been reported missing, and indicated that he would be arrested if he drove the truck. Saxon, in turn, told his girlfriend, Lisa Marie Hesse, that if she used the truck and got caught, she would be arrested.
*610 Six weeks after Sughrim reported the truck "lost," it was involved in an accident with the plaintiff. Saxon's girlfriend, Lisa Marie Hesse, was driving the truck at the time.
The plaintiff filed suit against Hesse and Ryder. Ryder asserted the truck had been stolen at the time of the accident. The plaintiff then amended the complaint to add Saxon and College Park Texaco. The plaintiff obtained defaults against Hesse and College Park and dismissed Saxon prior to trial.
At trial, Ryder requested a special jury instruction on conversion. Plaintiff's counsel objected. After a discussion on the issue, the trial court denied Ryder's request, and gave the jury a modified conversion instruction.
The jury found that Hesse was negligent, that her negligence caused plaintiff's damages, and that Saxon had not stolen or converted the truck at the time of the accident. The court entered a final judgment for the plaintiff.
Ryder argues a new trial is required because the conversion instruction was inaccurate and confusing. We agree that the instruction may not have been perfect, but it was neither inaccurate nor confusing. In Goldschmidt v. Holman, 571 So.2d 422 (Fla.1990), the supreme court stated the standard of review of a trial court's decision on a jury instruction:
Decisions regarding jury instructions are within the sound discretion of the trial court and should not be disturbed on appeal absent prejudicial error. Prejudicial error requiring a reversal of judgment or a new trial occurs only where "the error complained of has resulted in a miscarriage of justice." § 59.041, Fla. Stat. (1989). A "miscarriage of justice" arises where instructions are "reasonably calculated to confuse or mislead" the jury. Florida Power & Light Co. v. McCollum, 140 So.2d 569, 569 (Fla.1962).
Id. at 425.
"Under Florida's dangerous instrumentality doctrine, the owner of a motor vehicle is liable to third persons for injuries caused by the negligent operation or use of the motor vehicle by the person to whom the owner entrusted the vehicle." Dockery v. Enter. Rent-A-Car Co., 796 So.2d 593, 596 (Fla. 4th DCA 2001). "[T]o vitiate the owner's initial consent and deem the vehicle `no longer on the public highways by authority of the owner,' the vehicle must be shown to have been the subject of a theft or conversion." Id. at 599. Thus, whether the Ryder truck had been converted at the time of the accident necessarily determined the defendant's liability in this case. An accurate instruction on the issue of conversion was critical.
The defense provided the court with the following proposed special instruction on the issue of conversion:
A conversion consists of an act in derogation of the Defendants [sic] possessory rights, and any wrongful exercise or assumption of authority over another's goods by an unauthorized third party depriving the Defendant of the possession of the vehicle, permanently or for an indefinite time, is a conversion. The gist of a conversion has been declared to be not the acquisition of the property by the wrongdoer, but the wrongful deprivation of a person of property to the possession of which he is entitled.
Plaintiff's counsel objected to the special instruction. The trial court then took the initiative to craft an instruction, which read:
[T]he issue for your determination on Ryder TRS, Inc.'s defense of conversion or theft is whether prior to the accident, *611 Ryder TRS had been wrongfully deprived of the use of [sic] possession of the vehicle permanently or for an indefinite period of time.
Plaintiff's counsel once again objected and argued the court should restrict the definition to language from this court's opinion in Dockery. The court acquiesced and gave the following instruction over defense objection:
The issue for your determination on Ryder TRS, Inc.'s defense of conversion or theft is whether at the time of the accident, Ryder TRS, Inc. had been wrongly deprived of the incidents of ownership of the vehicle.
The instruction here was not incorrect or inaccurate. At worst, the instruction was imprecise. A jury instruction might have been drafted that was better tailored to Ryder's defense. Indeed, the trial court's instruction appears to have been the better one. However, the instruction given, while perhaps imprecise, did not mislead or confuse the jury and no "miscarriage of justice occurred." In fact, each side explained "incidents of ownership" during closing argument.
We therefore affirm.
GROSS, J., concurs.
FARMER, C.J., concurs specially with opinion.
FARMER, C.J., concurring specially.
For the past four decades a number of very dedicated lawyers have labored on the Supreme Court Committee on Standard Jury Instructions (SCCSJI) in Civil cases.[1] Their only purpose has been to write jury instructions explaining the law to lay jurors clearly and understandably.
In casting standard instructions, there is a prominent view that would allow no deviation from the text of a supreme court opinion laying out the substance of the law that is the subject of the instruction. As reflected by the first version proposed by defendant Ryder in this case, the idea is that appellate opinions should be applied in the same way statutes are usedthat is, with a rigid adherence to the text of the opinion and without change. And so, even if the court wrote its opinion in the language of the law schools rather than for ordinary citizens, under this theory the jury instruction must nevertheless be formed without deviation from the court opinion. It is that view that led to defendant Ryder's proposed instruction in this case.
I think that view is demonstrably untrue. Judges write appellate opinions filled with metaphor and simile. They write to illustrate and thus to clarify. They write to persuade. Their primary role, even before outcomes, is to convey legal ideas. Theirs is not to fix the permanent legal formulation of those ideas for jurors. In fact few appellate authors would be at ease with others using their prose as templates for a jury instruction.
In this case, defendant Ryder proposed that the jury be instructed thus:
"A conversion consists of an act in derogation of the defendant's possessory rights and any wrongful exercise or assumption of authority over another's good by an unauthorized third party depriving the defendant of the possession of the vehicle permanently of for an indefinite time is a conversion. The gist of a conversion has been declared to be not the acquisition of the property by *612 the wrongdoer but the wrongful deprivation of a person of property to the possession of which he entitled."
I am not sure whether this proposal correctly states the law because I do not understand what thought it proposes to convey. I doubt that many lawyers could follow it, let alone jurors unused to legal jargon. In short, this proposed jury instruction is incomprehensible.
Having read defendant's brief I think I can say what its legal theory of defense is, and in my opinion it is wrong. Defendant argues it can avoid liability because a thief ultimately ended up with a vehicle it had entrusted to a lessee. The problem is that the law for this legal defense requires that, in order to escape liability under the dangerous instrumentality law, any theft or conversion must deprive the owner of the property. Here the defendant had previously deprived itself of the vehicle by giving it to its lessee.
The later event of a thief stealing it from the lessee is not a theft or conversion from the owner so as to absolve it under Susco. Susco Car Rental Sys. of Florida v. Leonard, 112 So.2d 832, 835-36 (Fla.1959) ("[W]hen control of ... a vehicle is voluntarily relinquished to another, only a breach of custody amounting to a species of conversion or theft will relieve an owner of responsibility for its use or misuse."). The owner had already given up possession to the lessee, so it had by then lost control to someone else. The fact that the entrustee negligently (or otherwise) might allow a thief to get it is not a legal ground to avoid the owner's liability. The prospect that an unknown person might take possession from its lessee is foreseeable to the owner when it leases it.
The owner must necessarily exercise some discretion in those it selects as lessees and hope thereby to lessen the likelihood that a thief might end up with the vehicle. Whatever risks survive after the exercise of such owner diligence in leasing it are coverable by insurance. From my perspective, it is not so much defendant's lack of clarity in the proposed instruction that leads to the outcome, as its failure to advocate the correct law.

ON MOTION FOR REHEARING
We deny appellant's motion for rehearing, rehearing en bane, and certification.
FARMER, C.J., and MAY, J., concur.
GROSS, J., concurs specially with opinion.
GROSS, J., concurring specially.
I concur with the majority opinion and the denial of the motions for rehearing, rehearing en banc, and certification. I write to fully explain my reasons.
Too many of the non-standard jury instructions proposed by the litigants at trial are incomprehensible. As Judge John Kane has written, in the first half of the nineteenth century, "when jurors were not presumed or screened for the ability to read, judges instructed them orally in frank, natural language." John L. Kane, Giving Trials a Second Look, 80 DENV. U.L.REv. 738, 739 (2003). More complex jury instructions arose once "appellate courts came into prominence." Id.
Cases were reversed for incorrect statements of the law, with the implied and characteristically unexamined assumption that the jury followed them in the first place.... As trial judges were naturally averse to being reversed and appellate courts rigorously insistent upon compliance with their increasingly precise pronouncements of law, resort was made to instructions written in the language of appellate opinions ....

*613 As Professor Lawrence Friedman observed in his monumental A History of American Law, instructions became "technical, legalistic, utterly opaque ... [, and] almost useless as a way to communicate with juries; the medium contained no message. Each instruction had to be framed with great care, so as not to give the upper court a chance to find reversible error."
Id. (quoting LAWRENCE M. FRIEDMAN, A HISTORY OF AMERICAN LAW 399 (2d ed.1985)). As Judge Farmer wrote in his concurring opinion, this development of the law led to the "view that would allow no deviation from the text of a supreme court opinion laying out the substance of the law that is the subject of the instruction." Ryder TRS, Inc. v. Hirsch, 900 So.2d 608, 611 (Fla. 4th DCA Mar.2, 2005) (Farmer, C.J., concurring specially).
The modern trend is to revise and update jury instructions so that they are expressed in plain English. Kane, supra at 740.
The standard of review of Goldschmidt v. Holman, 571 So.2d 422 (Fla.1990), permits courts to use plain English, non-standard jury instructions and to move away from overly legalistic quotes from appellate cases. If a "miscarriage of justice" arises only where instructions are " `reasonably calculated to confuse or mislead' the jury," then courts have leeway in instructing jurors using plain English. Id. at 425 (citation omitted).
In this case, Ryder sought to avoid the dangerous instrumentality doctrine based on the defense articulated in Susco Car Rental System of Florida v. Leonard, 112 So.2d 832 (Fla.1959). In that case, the supreme court wrote that "when control of... a vehicle is voluntarily relinquished to another, only a breach of custody amounting to a species of conversion or theft will relieve an owner of responsibility for its use or misuse." Id. at 835-36. Later in the opinion, the supreme court used different language to describe the same defense, as one where an owner "has in fact been deprived of the incidents of ownership" of a "dangerous agency" such as a motor vehicle. Id. at 837.
In Thomas v. Atlantic Associates, Inc., 226 So.2d 100 (Fla.1969), the supreme court acknowledged that Susco's two descriptions of the defense are synonymous:
Since it affirmatively appeared that the owner had given its consent to the use or operation of the automobile beyond its own immediate control, the only real issue was whether the owner bad `in fact been deprived of the incidents of ownership' or, as stated elsewhere in Susco, there had been `a breach of custody amounting to a species of conversion or theft.'
Id. at 102 (quoting Susco, 112 So.2d at 835-37).
Relying on Susco, one authority has written that "the dangerous instrumentality doctrine will not be applied to render the owner liable where the owner has been deprived of the incidents of ownership by conduct amounting to a species of conversion or theft." 4A FLA. JUR. 2D Automobiles and Other Vehicles § 634 (2004) (footnotes omitted).
The instruction given by the trial judge tracked the language from Susco and Thomas. While legally correct, it is not as user friendly as the instruction the judge originally proposed. I cannot fault the trial judge for using language penned by the supreme court and quoted in Florida Jurisprudence. Because of the way the law has developed, perhaps the trial judge felt more secure in using an instruction containing language from appellate cases.
*614 The defense instruction was verbose and confusing, unlikely to assist the jury in resolving Ryder's defense. The instruction proposed by the court was more to the point, in language the jury could understand and apply. The instruction actually given substituted the term "incidents of ownership" for "use or possession."
In non-legalese, the instruction given and the one the court proposed both asked the jury whether the truck had been stolen from Ryder prior to the accident. The legal concepts involved are not foreign to a jury and they were effectively discussed by both sides in their closing arguments.[1],[2]
The rule in Florida is that "if jury instructions, viewed as a whole, fairly state the applicable law to the jury, the failure to give particular instructions will not be error." CSX Transp., Inc. v. Whittler, 584 So.2d 579, 586 (Fla. 4th DCA 1991). For that reason, "[a]n instruction is not rendered misleading and harmfully erroneous because the construction of the sentences or the words used are amenable to some criticism, so long as the meaning the court intended to convey is reasonably clear." Kline v. Publix Super Mkts., Inc., 178 So.2d 739, 740 (Fla. 2d DCA 1965).
Typically, reversals based on deficient jury instructions involve incorrect statements of the law. For example, in Bankers Multiple Line Insurance Co. v. Farish, 464 So.2d 530, 533 (Fla.1985), the trial court gave an instruction that "the greater a defendant's wealth, the greater must be punitive damages." The supreme court reversed for a new trial on punitive damages, since the instruction was "not an accurate rule of law" that had been "specifically repudiated" in an earlier case. Id.; see also Coble v. Am. Parks, 576 So.2d *615 422, 423 (Fla. 4th DCA 1991) (holding that reversal for a new trial was required where jury instruction relating to fraud "was incorrect"); Poole v. Lowell Dunn Co., 573 So.2d 51, 53-54 (Fla. 3d DCA 1990) (reversal mandated where instruction "misstated Florida law on causation"); Bartier v. Duncan, 541 So.2d 631, 633 (Fla. 1st DCA 1989) (finding that reversal was required where instruction was "incorrect statement of law because substantial parts of the rule were omitted from" Corpus Juris Secundum quotation). This case did not involve an incorrect statement of the law.
NOTES
[1] Candor compels me to disclose that I have lately been one of those engaged in what now seems to some to be an unavailing effort.
[1] The plaintiff characterized the defense as one avoiding responsibility "because there was a theft or conversion of the vehicle," which failed because Ryder was never deprived of the "incident[s] of ownership of the vehicle." The plaintiff argued that the car had never been stolen from Ryder:

They didn't want [Saxon] arrested. If someone steals your car, you want them arrested. They specifically said, we don't want him arrested ... [w]hy, because they had some kind of agreement, loose arrangement that the vehicle was there, that he could use it and pay them, and if he didn't use it, they were free to come and get it.
The plaintiff's argument effectively discussed the language of the jury instruction:
[W]hat are the incidents of ownership of a truck? They are you've got the keys. You can drive it. You can have it. You can sell it. You can do what you want to do with it. And what did Saxon tell them on this vehicle when they raised the question? The keys are here. The truck's here. Come and get it, and ... they basically just extended his agreement by inaction, and as such, it should not be defined as deprivation of incidents of ownership or as a theft or conversion.
[2] Ryder's closing argument focused at length on the question of "incidents of ownership." For example, the argument included the following:

[W]hat is the incidents of ownership, the number one thing, possession, legal possession to own your own property to possess it.... In any rental situation, the owner has the right to be entitled to the possession of that vehicle .... When the owner's rights to possession are taken away by another person, we have been deprived of the possession of our property and as such, a conversion has been committed.
Ryder argued that the rental agency's report to the police that the vehicle was stolen was evidence that they had not consented to Saxon's continued possession of the car.
Forty days pass between the time when this police report was made and [Ryder] wanting to have [its] vehicle back until the accident occurred. In those 40 days, Mr. Sughrim. . . went by Saxon's home to find the vehicle, so he could call the police, so that they could assist him in the recovery.... So the question for your very considered decision is was the rental vehicle the subject of a theft or a conversion ... at the time of the December 25th, 1998 accident? The answer... is inescapably yes.